UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Binyam Gebreslassie,  Civil No. 05-326 (DWF/JSM)

     Plaintiff,

v.  MEMORANDUM
OPINION AND ORDER

Lyngblomsten; Lyngblomsten Care Center,
Inc., Lyngblomsten Foundation; and
Lyngblomsten Services, Inc., all Minnesota
Corporations d/b/a Lyngblomsten Care
Center,

     Defendants.

---

Jordan S. Kushner, Esq., Law Office of Jordan S. Kushner, counsel for Plaintiff.

Paul J. Zech, Esq., and Huyen Le Phan, Esq., Felhaber Larson Fenlon & Vogt - Minneapolis, counsel for Defendants.

---

## Introduction

The above-entitled matter came before the undersigned United States District Judge on June 24, 2005, pursuant to a Motion to Dismiss, or, in the Alternative, a Motion for Summary Judgment brought by Defendants Lyngblomsten, Lyngblomsten Care Center, Inc. ("the Care Center"), Lyngblomsten Foundation, and Lyngblomsten Services, Inc. (collectively, "Defendants").  In his complaint, Plaintiff Binyam Gebreslassie ("Plaintiff") alleges race and disability discrimination and retaliatory discharge in violation of the Americans with Disabilities Act ("the ADA"), Title VII of the Civil Rights Act, the St. Paul Human Rights Ordinance, 42 U.S.C. § 1981, and the Minnesota Workers' Compensation Act ("the MWCA").  Plaintiff opposes Defendants' motion in all respects.  For the reasons set forth below, Defendants' motion is denied.

**Background**

Gebreslassie is a 35-year-old male of Ethiopian national origin. He asserts that he was employed by Defendants from January 10, 2000, until January 23, 2004. Defendants contend that Lyngblomsten is the parent corporation of all the Lyngblomsten entities, but that Plaintiff was employed only by the Care Center.

In 2000, Plaintiff was hired as a nursing assistant. On or about December 30, 2002, Plaintiff was also given the position of neighborhood coordinator. In July 2003, Amy MacKenzie Wiffler became Plaintiff's supervisor. As a result of working both as a nursing assistant and a neighborhood coordinator, Plaintiff missed some coordinator meetings. Plaintiff contends that Wiffler harassed him about his absences on a number of occasions.

On October 3, 2003, Wiffler called Plaintiff into her office to discuss the issues that had arisen between Wiffler and Plaintiff regarding Plaintiff's absences. At that meeting, Plaintiff resigned his position as neighborhood coordinator. Plaintiff asserts that he then discussed Wiffler's alleged harassment of him with Defendants' human resources department. Plaintiff claims that he received no response or assistance from the human resources department with regard to his complaint.

On October 5, 2003, Plaintiff was injured on the job while he and another employee were lifting a resident. Plaintiff filled out an injury report and went to the hospital. Plaintiff contends that Defendants changed the prescribed method by which employees should lift residents the very next day from a recommended two-person lift to a single-person lift. Plaintiff asserts that Wiffler questioned him about the method he used to lift the resident and that she later issued him a written warning for having used the wrong lifting method even though Plaintiff asserts that he had followed the rules in place at the time his injury occurred. On October 11, 2003, Defendants

contacted Plaintiff at his home and told him that he had been suspended pending an investigation into the October 5, 2003, incident.

One week later, Plaintiff was asked to return to work. Plaintiff immediately registered a complaint with the human resources department regarding his suspension, but he claims that no action was taken in response. On October 14, 2003, Plaintiff filed a charge of discrimination against Defendants with the St. Paul Department of Human Rights ("the Department") and the Equal Employment Opportunity Commission ("EEOC"). In the complaint, Plaintiff checked the boxes indicating "national origin" and "race" as the bases for discrimination. Plaintiff alleged that he believed that he was being discriminated against because his fluency in English was limited. Plaintiff also set out the facts surrounding the October 5, 2003, incident and his subsequent suspension.

One week after the complaint was filed, but prior to Defendants' receipt of the complaint, Plaintiff was given a written warning alleging inappropriate behavior when he was meeting with Wiffler. In November 2003, Plaintiff was transferred to a different unit. While working in that unit, Janet Byrnes served as his supervisor. Plaintiff contends that upon transfer to Byrnes' unit, Plaintiff was assigned a position working in the laundry room. Plaintiff asserts that this was an undesirable assignment as the laundry room was dusty and cold.

Over the next few months, Plaintiff was issued three more written warnings, on November 21, 2003, December 30, 2003, and January 9, 2004. Plaintiff contends that the circumstances surrounding the events occurring on December 30, 2003, provide a good example of the discriminatory treatment he received while working for Defendants.

On December 30, 2003, Byrnes told Plaintiff to unload bottles of laundry chemicals and to lift them onto a table. Plaintiff objected to the assignment because the weight of the bottles

exceeded the work restriction that he had received from his doctor following the injury Plaintiff suffered on October 5, 2003.  However, Plaintiff contends Byrnes told him that if he did not do the assignment, he would be sent home.  While lifting the bottles, Plaintiff dropped one of the bottles on his knee.  Plaintiff asserts that he suffered severe pain in his knee and back as a result of the injury.  Plaintiff then asked to be taken to a hospital, but his request was denied.  Ultimately, Plaintiff went to the hospital by himself.

On January 6, 2004, in response to the above incident, Plaintiff filed another charge with the Department and the EEOC.  Plaintiff checked the box for "race" as the basis for the discrimination.  In the complaint, Plaintiff asserted that he had been arbitrarily disciplined.  Plaintiff also outlined the events occurring on December 30, 2003.

On January 9, 2004, Plaintiff brought a letter from his doctor to his supervisors stating that Plaintiff was to avoid cold temperatures at work.  Plaintiff complained of breathing problems and chest pain caused by the cold temperature in the laundry room.  In response, the Director of Human Resources allegedly called Plaintiff a "liar" and Plaintiff was suspended for three days.  On January 12, 2004, Plaintiff was issued a written warning that stated that he had been uncooperative on January 9, 2004.

On January 23, 2004, Plaintiff was called into a meeting with his supervisors and was told that his employment was being terminated for leaving the floor he has been assigned to work on that day without signing out as required.  Plaintiff disputes the validity of the accusation.

On January 26, 2004, Plaintiff filed a third charge with the Department and the EEOC.  Plaintiff checked the boxes for "national origin," "color," and "race" as bases for the discrimination.  The charge alleges, in part, that Plaintiff's termination was "in reprisal for

[Gebreslassie] having objected to the discriminatory and disparate treatment in asking that [he] be reasonably accommodated as per [his] doctor's instructions."  (Affidavit of H. Le Phan ("Phan Aff."), ¶ 4, Exhibit C, at 2.)

The Department, after reviewing the administrative charges, found that:  (1) Plaintiff established that Defendants failed to provide Plaintiff with reasonable workplace accommodations; (2) Defendants' rationale for refusing to contact health care workers regarding Plaintiff's back injury was not legitimate and was objective evidence of pretext; and (3) Plaintiff was unable to establish that Defendants engaged in reprisal towards Plaintiff.  On February 14, 2005, Plaintiff filed a complaint with the federal court alleging race and disability discrimination and retaliatory discharge in violation of the ADA, Title VII of the Civil Rights Act, the St. Paul Human Rights Ordinance, 42 U.S.C. §1981, and the MWCA.

Defendants brought a Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment seeking:  (1) an order dismissing Lyngblomsten, Lyngblomsten Foundation, and Lyngblomsten Services, Inc., on the grounds that they were not Plaintiff's employer; (2) an order dismissing Plaintiff's claims under Title VII and the ADA against Lyngblomsten and Lyngblomsten Foundation as they are not "employers" as defined by the ADA; (3) an order dismissing Plaintiff's claims against Lyngblomsten, Lyngblomsten Foundation, and Lyngblomsten Services, Inc., because they were not named in any of the three discrimination charges; and (4) an order dismissing Plaintiff's disability claim under the ADA and the St. Paul City Ordinance for failure to exhaust his administrative remedies.

**Discussion**

I.  **Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.[1]  Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

---

[1] Defendants moved for dismissal, or, in the alternative, for summary judgment. Since Defendants presented matters outside the initial pleadings in the supporting memorandum to their motion, the Court will treat the motion as one for summary judgment as provided in Federal Rule of Civil Procedure 56. *See* Fed. R. Civ. P. 12(c).

### A.   St. Paul City Ordinance and MWCA Claims

Based on their assertion that the Lyngblomsten entities are separate business entities, Defendants seek to dismiss Plaintiff's claims against Lyngblomsten, Lyngblomsten Foundation and Lyngblomsten Services, Inc., asserting that Plaintiff was only employed by Lyngblomsten Care Center, Inc.  Whether all of the Lyngblomsten entities are properly before this Court depends on the resolution of the joint employer issue that is disputed by the parties.  *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977).  However, the Court need not resolve the issue at this time as Defendants have agreed to continue their motion with respect to the joint employer issue until discovery has taken place.  (Defendants' Reply Memorandum of Law in Support of Motion to Dismiss at 1.)  Accordingly, the Court denies Defendants' Motion to Dismiss, or, in the Alternative, a Motion for Summary Judgment with respect to this issue.

### B.   ADA Claim

Under the ADA, an administrative charge of discrimination is a prerequisite for bringing a lawsuit.  42 U.S.C. § 12117(a) (providing that claims under the ADA are subject to the procedures set forth in 42 U.S.C. § 2000e-5 including exhaustion of administrative remedies before a lawsuit may be brought).  *See also Love v. Pullman Co.*, 404 U.S. 522, 523 (1972) ("A person claiming to be aggrieved by a violation of Title VII of the Civil Rights Act of 1964, . . . [42 U.S.C. §§ 2000e, et seq.], may not maintain a suit for redress in federal district court until he has first unsuccessfully pursued certain avenues of potential administrative relief.")  Such exhaustion is required because "it provides the [agency] the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."  *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994) (*citing Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989)).  In

addition, exhaustion of administrative remedies serves to provide fair notice of the charges to the party against whom the charges have been brought. *Id.* at 223.

The Eighth Circuit has held that the scope of an ADA lawsuit should be limited to those claims that were set forth in the administrative record. *See Wallin v. Minnesota Dept. of Corr.*, 153 F.3d 681, 688-89 (8th Cir.1998), *cert. denied*, 526 U.S. 1004 (1999). A plaintiff may also seek relief from a court for discrimination that "grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir. 2000).

The Department's administrative charge forms essentially consist of two elements: check boxes where a complainant can designate the type of charge he or she is asserting and the narrative section, provided for the complainant to allege the facts and circumstances underlying the charge. Plaintiff did not check "disability" as the basis for any of his charges, therefore, the Court must look to the narrative section of the charges to determine if Plaintiff alleged circumstances that would be reasonably related to a disability claim for Plaintiff's back injury.[2] *Id.*

The narrative section of Plaintiff's January 6, 2004, administrative charge alleges that Plaintiff hurt himself while working with a patient, although he does not specifically describe the injury that he suffered. (Phan Aff., Exhibit B, at 1.) The charge goes on to assert that his

---

[2] Defendants' counsel initially challenged Plaintiff's ability to bring any disability claims, but at the hearing on the matter counsel appeared to concede that Plaintiff had pleaded, and that the Department had addressed, Plaintiff's claim that Defendants had not accommodated his heat sensitivity. Insofar as Defendants assert that Plaintiff did not sufficiently exhaust his administrative remedies with regard to the heat sensitivity issue, the Court disagrees and finds that Plaintiff is not barred from bringing a disability discrimination claim as to that particular ailment. Thus, the only remaining issue is whether Plaintiff sufficiently identified his back injury, and Defendants' actions surrounding the injury, in the administrative charges.

supervisors issued him a written warning as a result, under the pretext that he was being "uncooperative" and made him return to work "in pain." *Id.* The charge also asserts that Plaintiff was refused his request to be taken to a hospital emergency room, but was instead told to see a company doctor. *Id.*

Count 3 of Plaintiff's complaint, alleging disability discrimination, states that "Plaintiff's medical conditions and injuries . . . constitute impairments that substantially limited one or more of his major life activities." (Gebreslassie Complaint, at 9.) The claim goes on to state that "Defendants . . . failed to reasonably accommodate his disability, in [their] imposition of discriminatory terms, conditions, and privileges of employment, and [their] termination of Plaintiff from employment." *Id.*

Viewed under the *Kells* standard, the Court finds that Plaintiff's disability claim in his complaint is "like or reasonably related" to the allegations in his January 6, 2004, administrative charge. 210 F.3d at 836. In the January 6, 2004, administrative charge, Plaintiff alleges that he suffered a back injury, that Defendants failed to provide him with medical assistance, and that Defendants issued him a written warning in retaliation. The Court finds that this charge was sufficient to provide both the Department and Defendants an opportunity to investigate the allegedly discriminatory practices. Thus, Defendants' motion is denied with respect to Plaintiff's disability claim.

## Conclusion

The parties will have to decide whether a settlement of this case in the context of the Court's decision will serve their best interests. Magistrate Judge Janie S. Mayeron is, of course, available to assist in negotiation of a settlement of the case if the parties so request. Magistrate Judge Janie S. Mayeron's Calendar Clerk, Katie Haagenson, can be reached at 651-848-1190.

9

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Motion to Dismiss, or, in the Alternative, a Motion for Summary Judgment brought by Defendants Lyngblomsten, Lyngblomsten Care Center, Inc., Lyngblomsten Foundation and Lyngblomsten Services, Inc. (Doc. No.5) is **DENIED**.

Dated:  August 16, 2005            s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of the United States District Court